**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | | |
|---|---|---|
| BERTON G. TOAVS, | ) | 3:12-cv-000449-MMD-WGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| ROBERT BANNISTER, et. al. | ) | |
| Defendants. | ) | |

Before the court is Plaintiff's Motion for Leave to File First Amended Complaint. (Doc. # 34.)[1] Defendants oppose the motion. (Doc. # 37.) Plaintiff filed a reply. (Doc. # 40.)

After a thorough review, Plaintiff's motion is denied without prejudice.

## I. BACKGROUND

At all relevant times, Plaintiff Berton G. Toavs was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl., Doc. # 5 at 1.) The allegations giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Currently, the named defendants are Dr. Robert Bannister, Dr. David Mar, Dr. Marsha Johns, and John Peery. (*Id.* at 2-3.)

On screening, the court determined Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to a serious medical need. (*See* Screening Order, Doc. # 4.)

In his original complaint, Plaintiff alleges that he was incarcerated in 2001, and came

---

[1] Refers to court's docket number.

to NDOC in need of back and neck surgery, which he did not receive for five years despite his requests. (Doc. # 5 at 4.) He claims that in 2006, Defendants performed an unnecessary carpal tunnel surgery on his left arm and hand. (*Id.*) In 2007, Plaintiff once again requested neck surgery for spinal decompression and calcium buildup. (*Id.*) He claims this request was finally granted, but it was "too little too late" as they only allowed half of the necessary surgery, and left him permanently disfigured and partially crippled in his left hand and arm. (*Id.*)

In November 2010, Plaintiff claims he began to experience severe pain and a lack of mobility in his hands and arms, in addition to numbness. (*Id.*) He contends Defendants ignored his requests for care until Plaintiff filed a complaint in state court, which he concedes was dismissed for failure to exhaust his administrative remedies. (*Id.* at 4-5.)

Plaintiff asserts Defendants gave him the requested surgery before he could "re-exhaust" his administrative remedies, but five days after the surgery, they knowingly deprived him of pain medication in an effort to cause him harm. (*Id.* at 5.) He further claims he was denied requests for physical therapy, depriving him of the chance to maximize his recovery. (*Id.*)

Plaintiff goes on to allege that a year after the surgery he continued to suffer from extreme pain and lack of mobility and numbness in his hands and arms. (*Id.*) He avers that his requests for medical care have been ignored. (*Id.*) He further claims that after the last surgery, the surgeon told him that he would need at least one more procedure, but Defendants would not let it happen. (*Id.* at 7, 8.)

Plaintiff argues that Dr. Bannister, as NDOC's medical director, has a policy of encouraging medical staff to deprive inmates of care because of the cost. (*Id.* at 6.) He further alleges Dr. Bannister failed to adequately train and supervise his employees. (*Id.*)

Plaintiff contends that Dr. Bannister, Dr. Mar and Dr. Johns, as members of the Utilization Review Panel (URP), purposefully deprived Plaintiff of neck and back surgeries for years because of the cost, resulting in further injury. (*Id.*)

With respect to John Peery, Plaintiff contends he is NNCC's nursing director, who inappropriately directs his staff to respond to all requests for medical care by telling them to

come to sick call for an appointment, but in reality appointments are rarely set and sick call only occurs once or twice a week. (*Id.*) In addition, he claims that when appointments are set, they are forty-five to ninety days out. (*Id.*) Finally, he claims defendant Peery has stopped him from seeing the eye doctor, ignoring his requests in contravention of orders after his surgery. (*Id.* at 8.)

Plaintiff now seeks leave to amend his complaint for the purpose of including additional defendants including: James Cox (NDOC's director), Romeo Aranas (the current medical director), Asidrio Baca (Warden at NNCC), Terri Jacobs (Director of Nursing II at NNCC), a John or Jane Doe Quality Assurance Specialist IV for the Utilization Review Panel, Governor Brian Sandoval, Attorney General Catherine Cortez Masto, and Secretary of State Ross Miller. (*See* Doc. # 34 at 3-5.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). Otherwise, a party must seek leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2).

The time to amend as a matter of right has expired in this case; therefore, Plaintiff was required to seek leave of court to amend, as he has done here.

While the court should freely give leave to amend when justice requires, leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted). Thus, leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

"[L]eave to amend should be granted if it appears *at all possible* that the plaintiff can correct the defect." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation

1 marks and citation omitted). "[T]he rule favoring liberality in amendments to pleadings is
2 particularly important for the pro se litigant. Presumably unskilled in the law, the pro se
3 litigant is far more prone to make errors in pleading than the person who benefits from the
4 representation of counsel." *Id*. at 977-78 (internal quotation marks and citation omitted).

### III. DISCUSSION

**A. Timeliness**

Plaintiff originally submitted this action for filing on August 23, 2012. (Doc. # 1.) The complaint was screened on October 16, 2012, and Plaintiff was allowed to proceed against the current defendants on the Eighth Amendment claim mentioned above. (Doc. # 4.) Defendants filed their answer on October 29, 2013. (Doc. # 24.) Thereafter, the court issued its scheduling order on October 30, 2013, providing that any motion for leave to amend shall be filed within sixty days, or on or before December 29, 2013. (Doc. # 26.)

Plaintiff filed this motion on January 23, 2014 (Doc. # 34), several weeks after the deadline to file a motion for leave to amend. While Plaintiff previously sought an extension of the scheduling order deadline to complete discovery, he did *not* seek an extension of the deadline to seek leave to amend to add new parties. (*See* Doc. # 32.) Nor has he filed a timely motion seeking to otherwise amend the scheduling order.

Pursuant to the scheduling order, Plaintiff was required to establish "good cause" for his failure to file the motion within the time frame set forth in the scheduling order. (*See* Doc. # 26.) In his reply, Plaintiff only states that his motion was tardy because "the information available to him only came the first part of January 2014" so he could not meet the January 29, 2013 deadline. (*Id*.) Plaintiff does not explain what information he is referring to or where it came from. It is not clear whether he received this information in discovery or from some other source. If he did, Plaintiff should have anticipated receiving the information and could have at least filed a motion to extend the scheduling order deadline for seeking leave to amend. Plaintiff also indicates that in December of January, he was experiencing severe pain. (*Id*. at 2.)

In light of his pro se status, and the liberality with which pro se filings are viewed, Plaintiff will be given another opportunity to establish good cause as to why he sought relief outside the scheduling order's parameters.

**B. Failure to Comply with Local Rules**

Local Rule 15-1(a) requires a party moving for leave to amend to "attach the proposed amended pleading to any motion to amend, so that it will be complete in itself without reference to the superseding pleading." L.R. 15-1(a).

It appears that Plaintiff has intertwined his proposed amended pleading with his memorandum of points and authorities, and failed to include a separate proposed amended complaint that is complete in and of itself in accordance with Local Rule 15-1(a). Because Plaintiff is pro se, Plaintiff will be given an opportunity to correct this defect.

**C. Other Concerns**

**1. Proposed Defendants Director Cox, Warden Baca, Governor Sandoval, Attorney General Catherine Cortez Masto, and Secretary of State Ross Miller**

In his proposed amended complaint, Plaintiff asserts that Director Cox and Warden Baca are "affiliated with" NDOC, and are "responsible for the implementation of policies, procedures, and customs regarding the response to medical referrals and requests for medical evaluations of inmates with medical needs." (Doc. # 34 at 6.) He contends that "they have allowed company policy to deteriorate even more, by having no-sick-call, and by only doing 2 man-down situation[s]." (*Id*. at 12.)

With respect to the Governor, Attorney General and Secretary of State, Plaintiff alleges they make up the Board of State Prison Commissioners and "are responsible for creating, implementing and approving policies and procedures" for NDOC. (Doc. # 34 at 6.) He states that they are the decision makers for NDOC and were deliberately indifferent to Plaintiff's rights. (*Id*. at 12.)

Plaintiff does not allege that any of these proposed defendants personally participated in the alleged deliberate indifference to his serious medical need. Instead, he appears to base

5

his claim against them on their role as supervisory officials.

"'Under section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability.'" *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (en banc) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id*. (quoting *Hansen*, 885 F.2d at 646).

The causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citations and internal quotation marks omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." *Id*. (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 30, 2012)) (internal quotation marks omitted).

In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is the "moving force of a constitutional violation."'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation marks and citation omitted).

While Plaintiff *generally* references the implementation of policies, he does not allege sufficient facts to alert these proposed defendants as to what policies it is he contends they implemented that *resulted* in his alleged constitutional deprivation. Additionally, he attempts to hinge liability on a failure to train, supervision or control of subordinates, but uses only conclusory allegations and again fails to allege *facts* that would give rise to a claim

6

against each of these defendants.  While a complaint need not contain detailed factual allegations, threadbare recitations and conclusory statements are not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citation omitted).

It is not clear at this point that it would be impossible for Plaintiff to state a claim against these defendants. Accordingly, Plaintiff's motion for leave to amend to add these proposed defendants is denied without prejudice.

**2. Proposed Defendants Aranas and Jacobs**

With respect to proposed defendant Aranas, Plaintiff also states that he has simply carried on after his predecessor, Dr. Bannister. (Doc. # 34 at 12.) In the original complaint, Plaintiff alleged that Dr. Bannister, as NDOC's medical director, had a personal policy of encouraging his medical staff to deprive inmates of needed medical care due to cost, the inmate's conviction or whatever other reason is chosen by the employee. He further alleged that Dr. Bannister personally encouraged the other defendants to deprive Plaintiff of meaningful medical care, and failed to adequately train and supervise his employees. In addition, he contends that Dr. Bannister, along with Dr. Mar and Dr. Johns, who formed the URP, purposefully denied and/or delayed Plaintiff's necessary surgeries due to their cost.

While Plaintiff generally alleges that proposed defendant Aranas has taken over for Dr. Bannister (Doc. # 34 at 12), he does not include any allegations in the proposed amended complaint that would suffice to hold Aranas personally liable, or even liable as a supervisor. Stating generally that Aranas is Dr. Bannister's successor is insufficient. For this reason, Plaintiff's motion for leave to amend to add proposed defendant Aranas is denied; however, the denial is without prejudice as Plaintiff should be given a chance to include allegations that state a claim against defendant Aranas.

Plaintiff similarly contends that defendant Jacobs took over as director of nursing from John Peery. (Doc. # 34 at 12.)  In the original complaint Plaintiff alleged that defendant Peery told his staff to answer all inmate requests for medical care with a response

7

1 that they should come to sick call for an appointment; however, in reality, sick call does not
2 occur very frequently and appointments hardly ever get set, and when they do they are
3 forty-five to ninety days out.

4       Plaintiff includes no allegations regarding proposed defendant Jacobs' involvement
5 in his alleged constitutional deprivations. Simply stating that Jacobs is Peery's successor is
6 not enough. Therefore, Plaintiff's motion to amend to add defendant Jacobs' is denied.
7 Again, the denial is without prejudice.

8 **3. Proposed Jane/John Doe Quality Assurance Specialist IV**

9       Plaintiff has included no specific allegations regarding the actions of the Jane/John
10 Doe Quality Assurance Specialist IV. He has not identified any particular basis for naming
11 this individual as a defendant. Moreover, he has failed to actually identify this person.
12 Plaintiff has already requested and been given an extension of time to conduct discovery
13 and has yet to identify this individual. Accordingly, Plaintiff's request for leave to amend in
14 this respect is denied at this time. Should Plaintiff discover the identity of the individual and
15 should he be able to identify a specific basis for adding this defendant prior to the close of
16 discovery on April 30, 2014, Plaintiff may seek leave of court to amend. Therefore,
17 Plaintiff's request for leave to amend to add the proposed Jane/John Doe Quality Assurance
18 Specialist IV is denied without prejudice.

19 **III. CONCLUSION**

20       Plaintiff's motion for leave to amend (Doc. # 34) is **DENIED WITHOUT**
21 **PREJUDICE**. Plaintiff has **thirty days** from the date of this order to file a new motion for
22 leave to amend to add these proposed parties. Plaintiff is advised: (1) he must establish
23 good cause, supported by specific reasons, for failing to seek leave to amend within the
24 parameters of the scheduling order; (2) he must file a motion with a memorandum of points
25 and authorities addressing the good cause element identified above and stating why
26 amendment should be permitted; (3) he must file as an exhibit the proposed amended
27 complaint so that it is complete in and of itself; (4) he must make sure that the proposed
28

amended pleading corrects the deficiencies noted in this order such that sufficient factual allegations are included as to each proposed new defendant; (5) any allegations, parties or requests for relief from the original complaint that are not carried forward in the proposed amended complaint will no longer be before the court; (6) if he fails to file an amended complaint within the time period specified above, the action will proceed on the original complaint; and (7) Plaintiff shall clearly title the proposed amended complaint as such by placing the words "AMENDED COMPLAINT" on page 1 in the caption, and shall place the case number above the words "AMENDED COMPLAINT" in the space for "Case No."

**IT IS SO ORDERED**.

DATED: February 18, 2014.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

9