UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BERTON G. TOAVS,<br><br>              Plaintiff,<br><br>    v.<br><br>ROBERT BANNISTER, et. al.,<br><br>              Defendants. | 3:12-cv-00449-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>**RE: DOC. # 43** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Leave to File Second Amended Complaint. (Doc. # 43.)[1] Defendants have opposed the motion. (Doc. # 44.) After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

**A. Original Complaint**

At all relevant times, Plaintiff was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl., Doc. # 5 at 1.) The allegations giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id*.) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) Currently, the named defendants are Dr. Robert Bannister, Dr. David Mar, Dr. Marsha Johns and John Peery. (*Id*. at 2-3.) On screening, the court determined Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to a serious medical need. (Screening Order, Doc. # 4.)

Plaintiff alleges that he was incarcerated in 2001, and came to NDOC in need of back and

---

[1] Refers to court's docket number.

1  neck surgery, which he did not receive for five years despite his requests. (Doc. # 5 at 4.) He
2  claims that in 2006, Defendants performed an unnecessary carpal tunnel surgery on his left arm
3  and hand. (*Id*.) In 2007, Plaintiff once again requested neck surgery for spinal decompression
4  and calcium buildup. (*Id*.) He claims this request was finally granted, but it was "too little too
5  late" as they only allowed half of the necessary surgery, and left him permanently disfigured and
6  partially crippled his left hand and arm. (*Id*.)

7  In November 2010, Plaintiff claims he began to experience severe pain and a lack of
8  mobility in his hands and arms, in addition to numbness. (*Id*.) He contends Defendants ignored
9  his requests for care until he filed a complaint in state court, which he concedes was dismissed
10 for failing to exhaust his administrative remedies. (*Id*. at 4-5.)

11 Plaintiff asserts Defendants gave him the requested surgery before he could "re-exhaust"
12 his administrative remedies, but five days after the surgery they knowingly deprived him of pain
13 medication in an effort to cause him harm. (*Id.* at 5.) He further claims he was denied requests
14 for physical therapy, depriving him of the chance to maximize his recovery. (*Id*.)

15 Plaintiff then alleges that a year after the surgery he continued to suffer from extreme
16 pain and lack of mobility and numbness in his hands and arms. (*Id*.) He claims his requests for
17 medical care have been ignored. (*Id*.) He also states that after the last surgery, the surgeon told
18 him he would need at least one more procedure, but Defendants would not let it happen. (*Id*. at 7,
19 8.)

20 Plaintiff avers that Dr. Bannister, NDOC's former medical director, had a policy of
21 encouraging medical staff to deprive inmates of care due to cost. (*Id*. at 6.) He further contends
22 Dr. Bannister failed to adequately train and supervise his employees. (*Id*.)

23 Plaintiff asserts that Dr. Bannister, Dr. Mar, and Dr. Johns, as members of the Utilization
24 Review Panel (URP), purposefully deprived him of neck and back surgeries for years because of
25 the cost, resulting in further injury. (*Id*.)

26 With respect to John Peery, Plaintiff contends he is NNCC's nursing director, and
27 inappropriately directs staff to respond to requests for medical care by telling inmates to come to
28 sick call for an appointment, when in reality the appointments are rarely set and sick call only

occurs once or twice a week. (*Id.*) When appointments are set, he claims they are forty-five to ninety days out. (*Id.*) Finally, he claims Peery stopped him from seeing the eye doctor, ignoring his requests in contravention of orders after his surgery. (*Id.* at 8.)[2]

**B. First Motion for Leave to Amend**

Plaintiff previously filed a motion to amend his complaint to include NDOC Director James Cox, current Medical Director Romeo Aranas, NNCC Warden Baca, current NNCC Nursing Director Terri Jacobs, a John or Jane Doe Quality Assurance Specialist IV for the Utilization Review Panel, Governor Brian Sandoval, Attorney General Catherine Cortez Masto, and Secretary of State Ross Miller. (Doc. # 34.) The motion was denied without prejudice because Plaintiff sought leave to amend outside the scheduling order deadlines and failed to give a "good cause" explanation. (*See* Order at Doc. # 42.) In addition, he failed to comply with Local Rule 15-1(a) and include a separate proposed amended pleading. (*Id.*) Plaintiff's allegations also suffered from various deficiencies, which will be summarized below.

With respect to Governor Sandoval, the Attorney General and Secretary of State, the court advised Plaintiff he had not alleged sufficient facts to alert these persons regarding what policies they implemented that resulted in his alleged constitutional deprivation, and failed to include facts regarding a failure to train, supervise or control subordinates. (*Id.* at 6-7.)

As to Dr. Aranas and Nurse Jacobs, who Plaintiff indicated were successors to Dr. Bannister and John Peery, respectively, the court advised Plaintiff he had not included sufficient allegations to state a claim against them. (*Id.* at 7-8.)

Finally, with regard to Proposed Jane/John Doe Quality Assurance Specialist IV, Plaintiff did not include any particular basis for naming this person as a defendant. The request for leave to amend was denied in this regard, and Plaintiff was instructed that should he discover the identity of the individual and is able to state a specific basis for adding the defendant, he could seek leave of court to amend. (*Id.* at 8.)

Plaintiff was given thirty days to file a new motion for leave to amend that was to:

---

[2] Plaintiff acknowledges the allegations beyond the statute of limitations are not actionable, but includes them for background information and to show a pattern of conduct. (*See* Doc. # 43-1 at 7.)

1  (1) establish good cause, supported by specific reasons, for failing to seek leave to amend within
2  the parameters of the scheduling order; (2) contain a memorandum of points and authorities
3  addressing this good cause element and state why amendment should be permitted; and
4  (3) include a separate proposed amended complaint that is complete in and of itself and corrects
5  the deficiencies noted in the order. (*Id*. at 8-9.)

**C. The Instant Motion for Leave to Amend**

On March 21, 2014, Plaintiff filed a new motion for leave to amend (Doc. # 43) and proposed amended complaint (Doc. # 43-1)[3]. First, as he did in his previous motion for leave to amend, Plaintiff seeks to add as defendants: NDOC Director James "Greg" Cox, current NDOC Medical Director Dr. Romeo Aranas, NNCC Warden Isidrio Baca, current NNCC Nursing Director Terri Jacobs, Quality Assurance Specialist IV Donnamarie Milazzo[4], Governor Brian Sandoval, Attorney General Catherine Cortez Masto and Secretary of State Ross Miller. (Doc. # 43 at 1-2.)

Second, Plaintiff states that his motion for leave to amend is tardy because this information only became available in the beginning of January 2014. (*Id*. at 3.) Plaintiff also makes vague reference to research as being behind the late filing of his motion for leave to amend. (*Id*.)

Third, Plaintiff has included a separate proposed amended complaint that is complete in and of itself as the court instructed. (Doc. # 43-1.) Plaintiff repeats the allegations of the original complaint, and includes some additional allegations which will be discussed in detail in the court's analysis of Plaintiff's proposed amendment, *infra*.

**D. Defendants' Opposition**

Defendants argue that Plaintiff's motion should be denied because it still fails to establish good cause for not being filed within the parameters of the scheduling order. (Doc. # 44 at 3-4.) To the extent Plaintiff claims he did not receive the information until January 2014, Defendants

---

[3] The filing is technically one day late; however, neither the Defendants nor the court intend to use this slight delay as a basis for denying the motion.

[4] Plaintiff has now identified the person he previously identified only as a Jane/John Doe Quality Assurance Specialist IV.

- 4 -

1  assert that Plaintiff still does not explain what information he received and if he is referring to
2  their discovery responses, these were served on December 10, 2013, but waited until January 24,
3  2014 to file his motion. (*Id*. at 3.) Defendants also argue Plaintiff does not correct the
4  deficiencies noted in the court's order on Plaintiff's previous request to amend. (*Id*. at 5-8.)

## II. LEGAL STANDARD

After the period for leave to amend as of right has expired (as it has here), a party must either obtain the other party's consent or seek leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2). While the court should give leave to amend freely when justice requires, leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

## III. DISCUSSION

**A. Timeliness**

"Once the district court enters a scheduling order setting forth a deadline for the amendment of pleadings, modifications are allowed only upon a showing of 'good cause.'" *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998).

Pursuant to the scheduling order entered in this action, any motion for leave to amend was to be filed on or before January 29, 2013. (Doc. # 24.) Plaintiff filed his initial motion seeking leave to amend on January 23, 2014. (Doc. # 34.) This was several weeks after the scheduling order deadline, and Plaintiff did not seek an extension of the deadline or otherwise attempt to amend the scheduling order. Plaintiff did not address the untimeliness of that motion, but in his reply brief, stated that the information had only been made available to him in the beginning of January 2014. (Doc. # 26.) He did not explain what information he was referring to or where it came from. In denying his motion for leave to amend without prejudice, the court instructed Plaintiff that if he decided to file a new motion for leave to amend, it must establish "good cause, supported by specific reasons, for failing to seek leave to amend within the parameters of the scheduling order." (Doc. # 42 at 8:22-24.)

In this motion for leave to amend, Plaintiff does not provide any additional insight into

- 5 -

1  why he filed his motion outside the parameters of the scheduling order. Plaintiff again states that
2  he did not receive the information until "the first part of January 2014," and adds a vague
3  reference to "research" in explaining the tardiness of his motion. (Doc. # 43 at 3.) Despite
4  advising Plaintiff that he needed to explain what information it was that he received and from
5  where he received it, he provides none of these details. Nor does he elaborate on what he means
6  by "research." Even if the court were to assume that he discovered this information in discovery
7  responses served by Defendants, they have represented that these were served in December
8  2013, giving Plaintiff time to file either a motion for leave to amend or a motion to modify the
9  scheduling order. While the motion was not filed egregiously beyond the scheduling order
10 deadline, Plaintiff's omission of a specific explanation amounting to "good cause" despite the
11 court's clear instruction is troubling.

12 Even if the court were to find Plaintiff's obscure explanation regarding the untimeliness
13 of his motion did amount to "good cause," the court will now discuss why Plaintiff's motion
14 should still be denied as a result of his failure to correct the deficiencies in the proposed
15 amendment.

**B. The Allegations Plaintiff Seeks to Include Would Be Subject to Dismissal**

17 Leave to amend may be denied if the proposed amendment would be subject to dismissal.
18 *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Denial of
19 leave to amend is more appropriate under circumstances such as these where Plaintiff was
20 already notified of the deficiencies in his proposed amendment and failed to make corrections so
21 that it would not be subject to dismissal. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133
22 (9th Cir. 2013) (finding the plaintiff had "ample opportunity to properly plead a case").

23 Plaintiff has simply not included additional *factual* allegations in his proposed amended
24 complaint that cure the deficiencies noted in the order denying his previous motion for leave to
25 amend without prejudice.

**1. Director Cox and Warden Baca**

27 Plaintiff alleges that Director Cox and Warden Baca "have allowed company policy to
28 deteriorate even more, by having no-sick call, and by only doing 2 man-down situation can you


1  be attended to at NNCC." (Doc. # 43-1 at 10 ¶ 15.) Plaintiff avers that Director Cox implements
2  the administrative regulations (ARs), including AR 568 which states that the wardens and facility
3  managers are responsible for implementing policies. (Doc. # 43-1 at 12 ¶ 18.)

4  The court previously advised Plaintiff (Doc. # 42 at 6) that "'[u]nder section 1983,
5  supervisory officials are not liable for actions of subordinates on any theory of vicarious
6  liability.'" *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (en banc) (*overruled* on other
7  grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)) (quoting *Hansen v. Black*, 885
8  F.2d 642, 645-46 (9th Cir. 1989)). "A supervisor may be liable only if (1) he or she is personally
9  involved in the constitutional deprivation, or (2) there is a 'sufficient causal connection between
10 the supervisor's wrongful conduct and the constitutional violation.'" *Id.* (quoting *Hansen*, 885
11 F.2d at 646).

12 The causal connection can include: "1) [the supervisor's] own culpable action or inaction
13 in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional
14 deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous
15 indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir.
16 2013) (citations and internal quotation marks omitted). "The requisite causal connection can be
17 established by setting in motion a series of acts by others, or by knowingly refusing to terminate
18 a series of acts by others, which the supervisor knew or should have known would cause others
19 to inflict a constitutional injury." *Id.* (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir.
20 2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 20, 2012)) (internal quotation marks omitted).

21 In addition, "[s]upervisory liability exists even without overt personal participation in the
22 offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a
23 repudiation of constitutional rights' and is the 'moving force of a constitutional violation.'"
24 *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation marks and citation
25 omitted).

26 Plaintiff still includes only a conclusory reference to various NDOC policies, but no
27 actual facts which connect those policies and these defendants to the alleged deliberate
28 indifference to Plaintiff's serious medical needs. The fact that the director and warden of NDOC

are responsible for implementing policies within the institutions does not in and of itself give rise to a claim against them as supervisors. Plaintiff does not connect their implementation of a specific policy to his asserted denial of adequate medical care. Therefore, Plaintiff's motion for leave to amend should be denied as to Director Cox and Warden Baca.

**2. Governor Brian Sandoval, Attorney General Catherine Cortez Masto, Secretary of State Ross Miller**

Plaintiff alleges that Governor Sandoval, Attorney General Cortez Masto, and Secretary of State Miller make up the Board of State Prison Commissioners and are decision makers for NDOC and act with "deliberate indifference, gross negligence, and reckless disregard to the safety, security and constitutional and statutory rights of the Plaintiff." (*Id*. ¶ 16.) He alleges that they apply policies and practices of: "training and authorizing employees and officials to disregard the medical needs of the Plaintiff if such needs conflicted with budgetary or monetary concerns;" "subjecting Plaintiff to unreasonable pain, suffering and physical injury if the medical needs conflicted with budgetary or monetary concerns;" "failing to adequately train, supervise, and control  employees and officials to respond appropriately to medical requests, referrals and/or orders for medical evaluations;" "failing to implement protocols and train employees or officials in the proper way to respond to medical requests, referrals and/or orders for medical evaluations;" "failing to adequately discipline employees or officials who ignore or disregard medical requests;" and "condoning and encouraging employees or officials in the belief that they can violate the rights of the Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits." (*Id*.)

Plaintiff then contends that he notified these defendants of his serious medical needs through correspondence dated February 28, 2014, and they have done nothing. (*Id*. ¶ 17, 14 ¶ 29, Doc. # 43 at 6-9.) He further asserts that they receive monthly reports through the Nevada Offender Tracking Information System (NOTIS). (Doc. # 43-1 at 14 ¶ 29.)

Once again, Plaintiff includes only threadbare recitations and conclusory statements concerning the Governor, Attorney General and Secretary of State. While Plaintiff lists out general policies that he believes these persons preside over, he has included no *facts* that connect

- 8 -

1  the supposed policies to the alleged deliberate indifference to his serious medical needs. Plaintiff
2  attempts to connect the policies with the violation of his Eighth Amendment rights by stating that
3  he gave these individuals notice of his medical needs on February 28, 2014; however, this post
4  hoc notification does not create an adequate nexus between the allegations of a denial of medical
5  care and the oversight of purported policies of NDOC in order to hold these persons liable.
6  Therefore, the court recommends that Plaintiff's motion for leave to amend be denied as to
7  Governor Sandoval, Attorney General Catherine Cortez Masto and Secretary of State Ross
8  Miller.

### 3. Dr. Aranas and Nurse Jacobs and Donnamarie Milazzo

Plaintiff alleges that Dr. Aranas, Ms. Jacobs and Ms. Milazzo "continue the company policy as their predecessors were doing." (Doc. # 43-1 at 10 ¶ 14.) Plaintiff further claims that Dr. Aranas is aware of ARs (Administrative Regulations) that govern medical policies at NDOC institutions. (*Id*. at 12-14 ¶¶ 20-22.) He contends that these defendants are deliberately indifferent to his medical needs because they are tasked with following approved ARs. (*Id*. at 14 ¶ 23.)

Plaintiff has not corrected the deficiencies the court identified when he brought his first motion for leave to amend with respect to Dr. Aranas and Nurse Jacobs. Plaintiff includes no facts specific to these defendants and their supposed role in the deliberate indifference to his serious medical needs. Simply stating that they continued the role of their predecessors is not sufficient. He did not describe their personal involvement in the claimed violation of his Eighth Amendment rights. Nor does Plaintiff include *any* factual allegations describing Ms. Milazzo's role in the asserted violation of Plaintiff's rights under the Eighth Amendment. As such, the court recommends that Plaintiff's motion for leave to amend be denied as to Dr. Aranas, Nurse Jacobs and Ms. Milazzo.

**C. Conclusion**

Based upon the absence of a "good cause" explanation for Plaintiff filing his motions to amend outside the parameters of the scheduling order and his failure to correct the deficiencies previously identified by the court concerning the proposed amendment, Plaintiff's motion for

- 9 -

leave to amend should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **<u>DENYING</u>** Plaintiff's motion for leave to amend (Doc. # 43).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: May 14, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE