UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BERTON G. TOAVS,

                          Plaintiff,

     v.

ROBERT BANNISTER, et al.,

                      Defendants.

Case No. 3:12-cv-00449-MMD-WGC

ORDER ADOPTING AND ACCEPTING
REPORT AND RECOMMENDATION

**I.    SUMMARY**

Before the Court is the Report and Recommendation of United States Magistrate Judge William G. Cobb ("R&R") (dkt. no. 73) relating to Defendants' motion for summary judgment (dkt. no. 47) and Plaintiff's cross-motion for summary judgment (dkt. no. 60). Plaintiff filed a timely objection on February 17, 2015 (dkt. no. 76) and Defendants filed a response (dkt. no. 77). Plaintiff filed a motion to strike Defendants' response (dkt. no. 78) and also filed a response to Defendants' response (dkt. no. 80).

First, with regard to Plaintiff's motion to strike, Defendants concede that they filed their response to Plaintiff's objections one day late. (Dkt. no. 79.) Defendants provide no reason for the late filing but argue that Plaintiff was not prejudiced. Defendants are responsible for obeying the Court's filing deadlines or requesting an extension. The Court will therefore grant Plaintiff's motion to strike and strike Defendants' response. As Defendants point out, LR IB 3-2 governs the filing procedure for objections to a magistrate judge's report and recommendation. That rule also states that an objection may be filed and a response to that objection may be filed, but it does not allow for any

further response. Plaintiff has filed a response to Defendants' response to Plaintiff's objections. (Dkt. no. 80.) Plaintiff has not requested, nor been given permission, to file an additional response and it is procedurally improper pursuant to LR IB 3-2. It is therefore stricken as well.[1]

With those issues resolved, the Court turns its attention to Plaintiff's objections.

## II.     BACKGROUND

The facts of this case are thoroughly set out in the R&R. At all relevant time, Plaintiff was an inmate in custody of the Nevada Department of Corrections ("NDOC"). (Dkt. no. 5.) The allegations in Plaintiff's Complaint concern events that occurred while Plaintiff was housed at Northern Nevada Correctional Center ("NNCC"). (Id.) Plaintiff is pro se.  He asserts claims under 42 U.S.C. § 1983 for deliberate indifference to his medical needs in violation of the Eighth Amendment.

## III.    STANDARD OF REVIEW

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is

---

[1]The Court notes, however, that it has reviewed the stricken filings and they do not affect the outcome of this Court's decision.

"material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). Courts must also liberally construe documents filed by pro se litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

# IV.   DISCUSSION

In the R&R, the Magistrate Judge first determined that some of the Complaint's claims were outside of the applicable statute of limitations. He thus restricted the Complaint to the following claims that allegedly took place in the two year period preceding the filing of the Complaint: "(1) that in November 2010, he began to experience severe pain, numbness and a lack of mobility in his hands and arms and Defendants ignored his requests until he filed a lawsuit in state court; (2) Defendants eventually approved the necessary surgery, but five days after, they knowingly deprived him of pain medication in contravention of his surgeon's orders, and he was denied requests for physical therapy which would have maximized his recovery; (3) he began to experience extreme pain and lack of mobility a year after this surgery, and his requests for medical care were ignored; (4) his surgeon requested one more surgical procedure, but Defendants would not approve it; (5) (from October 2010 forward) Dr. Bannister had a policy of encouraging staff to deprive inmates of care due to the cost or the inmate's particular conviction, and also failed to train and supervise his employees; (6) Dr. Bannister, Dr. Mar and Dr. Johns, as members of the Utilization Review Panel ("URP"), purposefully deprived him of surgeries (from October 16, 2010 forward) due to the cost; (7) John Peery oversaw the nursing department, and under his direction, sick call appointments rarely were scheduled, and when they did occur, they were set out too far; and (8) John Peery ignored his requests for a visit with the eye doctor despite doctors' orders which acknowledged a change in his vision following his last surgery." (Dkt. no. 73 at 6-7.) Plaintiff does not object to the R&R's determination of the applicable statute of limitations period and the limiting of the Complaint's allegations to said period.  The Court will therefore adopt the Magistrate Judge's determination as to the scope of Plaintiff's claims.

The R&R then considered all the evidence offered by the parties as it relates to each of the viable claims and determined that Plaintiff's cross-motion for summary judgment should be denied, and Defendants' motion for summary judgment should be

granted as to all claims except for Plaintiff's allegation that John Peery ignored his requests for a visit with the eye doctor despite doctors' orders which acknowledged a change in his vision following his last surgery. Plaintiff objects to the R&R's recommendation that this Court grant Defendants' summary judgment motion in part.[2]

In order to demonstrate deliberate indifference under the Eighth Amendment, Plaintiff must demonstrate that Defendants' response to his serious medical need was deliberately indifferent by showing: (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need; and (2) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citations omitted). The requirement of a purposeful act or failure to respond is intended to preclude a finding of deliberate indifference for accidents or inadvertent failures to provide adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Mere negligence does not rise to an Eighth Amendment violation. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Further, a mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Deliberate indifference is present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

---

[2]Plaintiff states in his objection that he "believes that these defendants should not be granted summary judgment and the Plaintiff should be allowed to present his alleged material facts before a jury made up of the honorable citizens of the State of Nevada." (Dkt. no. 76 at 10.)

1    Plaintiff does not argue that any particular portion of the R&R is incorrect or

2    poorly reasoned. Instead, he raises again some of the points he has previously made to

3    support his claims and asks the Court to consider new issues as well.

4    Plaintiff first argues that because there is no sick call available at NNCC, Plaintiff

5    complained about pain in his hands, arms, and neck on December 23, 2011, but was

6    not seen by his doctor until February 6, 2012. (Dkt. no. 76 at 5.) There is no evidence in

7    the record to support Plaintiff's assertion that there is no sick call at NNCC and, in fact,

8    the Complaint alleges that sick call occurs once or twice a week. (Dkt. no. 5 at 7.) As

9    the R&R correctly determined, there is also no evidence that Peerly had a policy of

10   rarely scheduling appointments or setting them out too far. (Dkt. no. 73 at 21.) Further,

11   the record shows that Plaintiff was seen on December 23, 2011, at sick call, and an

12   appointment was made with Plaintiff's neurosurgeon for February 1, 2012. (Dkt. no. 48-

13   4 at 5.) In the interim, x-rays were taken (dkt. no. 65-3) and Plaintiff's neurosurgeon

14   reviewed those x-rays and determined they looked "very good" on February 6, 2012

15   (dkt. no. 48-14 at 2). Plaintiff argues that he was in severe pain during this period and

16   had to seek medical treatment for his pain on December 25, 2011. However, the

17   records show that he was seen on December 25, 2011, for a lump in his throat. (Dkt.

18   no. 65-10 at 2.) There is no evidence that Plaintiff requested pain medication during this

19   period.

20   Plaintiff also argues that on May 25, 2012, he was seen for severe pain in his

21   neck and vision problems but his pain issues were never addressed. (Dkt. no. 76 at 6.)

22   He was seen in the infirmary on that date for pain in his hands and neck, as well as

23   vision problems. Although the progress notes are difficult to parse, it appears as though

24   Plaintiff was referred to his outside provider and a follow-up was scheduled for June 27,

25   2012. (Dkt. no. 48-4 at 6.) He was seen on July 10, 2012. (Dkt. no. 48-4 at 6-7.) On July

26   10, 2012, he was prescribed ibuprofen, placed on a soft diet to help his throat, and it

27   was ordered he be scheduled with the eye clinic and have neck x-rays obtained. (*Id.*)

28   ///

1    Plaintiff further asserts that prior to his release from the hospital, his

2    neurosurgeon advised him that physical therapy would improve his chances of

3    recovery, but he never received physical therapy. (Dkt. no. 76 at 8.) As the R&R noted,

4    the discharge notes and treatment notes from his neurosurgeon do not indicate that

5    physical therapy was required or advised. (Dkt. no. 73 at 18-19; dkt. no. 48-1 at 5.)

6    Plaintiff does not point to any evidence to demonstrate that he informed Defendants that

7    physical therapy was advised by his doctor. He only states that when he was meeting

8    with Dr. Gedney after his surgery, the issue of physical therapy came up in conversation

9    and he was told that NNCC does not have physical therapy and they do not refer out for

10   physical therapy. (Dkt. no. 76 at 8.) Plaintiff states that Dr. Gedney told him that physical

11   therapy would aid his recovery. (*Id.*)

12   Plaintiff also raises the fact that he asked for a pain medication, Lyrica, but was

13   not provided it. (Dkt. no. 73 at 6.) The records show that he asked to see Dr. Gedney on

14   September 24, 2011, regarding his pain medication and was prescribed another pain

15   medication, Baclofen, two days later. (Dkt. no. 71-2 at 2; dkt. no. 48-1 at 6.) On October

16   17, 2011, Plaintiff sent a kite asking for Lycira because his neurosurgeon said it could

17   help with some of the side effects he was experiencing with his other medication. (Dkt.

18   no. 71-1 at 3.) He was instructed to go to sick call. (*Id.*) He entered another kite on

19   December 21, 2011, requesting a replacement for Baclofen and requesting Lyrica. (Dkt.

20   no. 71-1 at 4.) He was seen on December 23, 2011, at sick call, and the notes do not

21   indicate any request for Lyrica on that date, and Plaintiff does not argue that he

22   requested Lyrica at sick call as directed. (Dkt. no. 48-4 at 5.)

23   When Judge Cobb entered the R&R, he noted that no medical records were

24   submitted for the period between July 2012 and December 2013. (Dkt. no. 73 at 20.)

25   Plaintiff now submits kites from that time period and argues that they demonstrate that

26   Defendants continued to ignore his medical needs. (Dkt. no. 76 at 6-7.) Plaintiff filed the

27   Complaint on August 20, 2012, and any issues developed after that point is outside of

28   the scope of this lawsuit and the Complaint. He only submits two kites in the relevant

time period. One, dated July 10, 2012, is a request to review his medical file. (*Id.*, Exh. B.) The other, dated August 1, 2012, requests a review of his medical file and also asks for a follow-up appointment with Dr. Gedney and an eye doctor appointment. (*Id.*) Plaintiff's claim about his eye doctor appointment is still viable, and any claim about delay in being allowed to view his medical records is outside the scope of this Complaint. His request for a follow-up appointment with Dr. Gedney does not raise any medical issues that would have required prompt addressing.

The arguments and evidence presented in Plaintiff's objections do not raise a genuine issue of material fact as to Defendants' deliberate indifference to his medical needs. The Court has reviewed the R&R, as well as the records and the parties' filings. The Court agrees with the Magistrate Judge's findings and adopts the R&R in full.

## V.   CONCLUSION

It is therefore ordered that the Report and Recommendation of Magistrate Judge William G. Cobb (dkt. no. 73) is accepted and adopted in its entirety. Defendants' motion for summary judgment (dkt. no. 47) is granted in part and denied in part. Plaintiff's cross-motion for summary judgment (dkt. no. 60) is denied. Plaintiff may proceed on his deliberate indifference claim based on the allegation that John Peery ignored his requests for a visit with the eye doctor despite doctors' orders which acknowledged a change in his vision following his last surgery.

It is further ordered that Plaintiff's motion to strike (dkt. no. 78) is granted. Defendants' response to Plaintiff's objections (dkt. no. 77) and Plaintiff's response to Defendants' response to Plaintiff's objections (dkt. no. 79) are stricken.

DATED THIS 31st day of March 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE